IN THE CIRCUIT COURT OF LEE COUNTY, ARKANSAS
CIVIL DIVISION

FILED
AT        O'CLOCK  M
  8:30        A
MAY 2 6 2015

CIRCUIT CLERK
LEE COUNTY, AR

FELICIA DANIEL, Individually,
and as Executrix of
THE ESTATE OF BOBBY EUGENE DANIEL                    PLAINTIFF

VS.                          Case No. 39 CV - 2015 - 5 2

BANK OF AMERICA, N.A.                                 DEFENDANT

---

### COMPLAINT AT LAW

---

Comes the Plaintiff, Felicia Daniel, individually and as executrix of the estate of

Bobby Eugene Daniel, deceased, by and through her attorneys, EASLEY & HOUSEAL, PLLC

and HICKY & COLLINS, and for her cause of action against the Defendant, Bank of America,

N.A. (hereinafter "Bank of America"), states:

1.     Plaintiff Felicia Daniel is an adult resident of Lee County, Arkansas.

2.     Bobby Eugene Daniel passed away December 28, 2011.

3.     Plaintiff is the duly appointed executrix of the Estate of Bobby Eugene Daniel

as evidenced by the Letters Testamentary attached hereto as Exhibit "A" and incorporated

herein by reference. Felicia Daniel brings this action both individually and in her capacity

as executrix of the Estate of Bobby Eugene Daniel.

4.     Defendant Bank of America is a North Carolina company authorized to do

business within the state of Arkansas. Defendant may be served through its agent for

service as registered with the Arkansas State Bank Department: The Corporation Company

d/b/a CT Corporation, located at 124 West Capitol Avenue, Suite 1900, Little Rock, AR


EXHIBIT
1

72201.

5.    Bank of America should be liable for the conduct of its agents and employees under the doctrine of *respondeat superior*.

6.    It is possible Bank of America transferred or assigned the loan in question at some point in time. Bank of America should be liable for the conduct of its successors and assignors.

7.    This Court has jurisdiction of the subject matter and parties hereto and venue properly lies in this county.

## FACTS AND ALLEGATIONS

8.    In 2011, Felicia Daniel and Bobby Eugene Daniel lived at their home located at 113 West Elise Avenue in Forrest City, Arkansas.

9.    Their home was purchased on or about April 17, 2008, when Bobby Daniel executed a Note in favor of the original lenders of the home. A copy of said Note is attached hereto as Exhibit "B". That Note was eventually transferred to Defendant Bank of America pursuant to the terms of the same.

10.    In conjunction with that Note, Bobby Daniel (and Felicia Daniel as his wife) executed a Deed of Trust, securing the obligation of the Note. A copy of said Deed of Trust is attached hereto as Exhibit "C", and was duly recorded with the St. Francis County Circuit Clerk at page 97 of Book 790 of the records of St. Francis County, Arkansas, on April 22, 2008.

11.    At some point in time, the original lenders (or their subsequent assignee(s)

Page 2 of 9

and/or successor(s) in interest transferred) sold and/or assigned the aforementioned Note to Bank of America. Under the terms of the Note, all successors or assignees are entitled to payment consistent with the Deed of Trust, and are likewise bound by the covenants and agreement set forth in the same.

12.    Bank of America has performed numerous acts in furtherance of the Deed of Trust, and is a real party in interest to both the Note and Deed of Trust.

13.    Accordingly, Bank of America ultimately referred to Plaintiff's loan number as being "loan number 183611937."

14.    The home located at 113 West Elise Avenue in Forrest City, Arkansas caught fire on December 25, 2011, and was a total loss.

15.    The home was insured by Farm Bureau Mutual Insurance Company of Arkansas, Inc. (hereinafter "Farm Bureau").

16.    On January 10, 2012, Bank of America issued a "Payoff Demand Statement" to Bobby Eugene Daniel which showed the total payoff on the home was $73,250.77. See Exhibit "D" attached hereto and incorporated herein by reference.

17.    On January 23, 2012, Farm Bureau issued check number 00121493 made payable to Bank of America in the amount of $73,283.10. See Exhibit "E" attached hereto and incorporated herein by reference (apparently Farm Bureau had been in contact with Bank of America, and thus the payoff amount communicated to Farm Bureau was slightly different than the amount given to Bobby Daniel).

18.    On January 31, 2012, Bank of America endorsed and negotiated the check,

and received the money shortly thereafter. See the back of check number 00121493 attached hereto as Exhibit "F" and incorporated herein by reference.

19.     Accordingly, the Deed of Trust and Note in favor of Bank of America was satisfied in full on or about January 31, 2012 and Plaintiffs were entitled to a release of the security instrument "without charge."

20.     Notwithstanding the payment received from Farm Bureau, Bank of America failed and refused to recognize satisfaction of the debt.

21.     Bank of America eventually exercised a non-judicial (statutory) foreclosure, and took title to the property in October, 2014, as evidenced by the Trustee's Deed attached hereto as Exhibit "G" and incorporated herein by reference.

22.     Following payment by Farm Bureau, the Defendant sent a copious amount of letters and made repeated and consistent telephone calls to the Plaintiff, demanding payment, stating payment was past due, threatening legal action, and altogether harassing the Plaintiff. This continued for a number of years.

23.     Plaintiff delivered to Bank of America, via facsimile and upon the request of Bank of America, a copy of the front and back of the check from Farm Bureau to Bank of America evidencing payment of the Note in full.

24.     Nevertheless, the Defendant continued in its persistent and harassing course of conduct, and has continued such harassment to the date of this filing.

25.     Sometime after the burning of their home, the Plaintiff moved a mobile home onto the property at 113 West Elise Avenue. The mobile home was used as a rental

property and source of income for the Plaintiff.

26.    Bank of America has no claim or interest in the mobile home.

27.    On April 1, 2015 and on multiple occasions since that time, Bank of America has demanded that the renters occupying the mobile home at 113 West Elise Avenue vacate the mobile home.

28.    Bank of America has further entered the mobile home, advised the renters that they were obligated to vacate the premises, and threatened that if their personal effects were not removed by May 15, 2015 they would be removed and sold by the Defendant (or its agents).

## COUNT I:
## VIOLATION OF ARKANSAS
## DECEPTIVE TRADE PRACTICES ACT

29.    Plaintiff incorporates each and every allegation found in the preceding paragraphs as if specifically set forth herein.

30.    Plaintiff's obligation to Bank of America was fully satisfied on or about January 31, 2012. Nevertheless, Bank of America has failed to recognize satisfaction of Plaintiff's debt and engaged in fraudulent, unconscionable, false, and/or deceptive practices as set forth in Ark. Code Ann. § 4-88-407.

31.    Bank of America's fraudulent, unconscionable, false, and deceptive practices were the proximate cause of Plaintiff's damages more particularly set forth below.

32.    Plaintiff is entitled to actual damages and attorney's fees.

33.    Punitive damages should be assessed to punish this defendant and to deter

this defendant, and others similarly situated, from such conduct in the future.

## COUNT II:
## NEGLIGENCE

34.     Plaintiff restates and realleges each and every paragraph set forth herein by reference.

35.     Defendant is in the business of lending.

36.     Defendant has a duty to give mortgagors credit for payments made on their behalf.

37.     The failure of the Defendant to recognize a payment of more than $70,000.00 breached Defendant's duty.

38.     Defendant's breach proximately caused the damages more particularly set forth below.

39.     Defendant's negligence is further evidenced by violations of Arkansas statutes, including those found in the Arkansas Deceptive Trade Practices Act and the Arkansas Fair Debt Collection Practices Act.

40.     Defendant's reckless conduct equates to gross negligence, and punitive damages are warranted to punish this defendant and deter it, and others similarly situated, from such conduct in the future.

## COUNT III:
## BREACH OF CONTRACT

41.     Plaintiff restates and realleges each and every paragraph set forth herein by reference.

Page 6 of 9

42.     Plaintiff executed a Note and Deed of Trust with Bank of America (more specifically, its predecessor in interest).

43.     The contracts provide that foreclosure will only be exercised in the event of default, and the borrower will be released from the Deed of Trust in the event of payment in full.

44.     Defendant breached the contracts by proceeding with foreclosure of Plaintiff's property despite having been paid in full for all debt owed.

45.     Accordingly, Plaintiff is entitled to her attorney's fees, costs, and damages proximately caused by the Defendant and more particularly set forth below.

## COUNT IV:
## VIOLATION OF ARKANSAS
## FAIR DEBT COLLECTION PRACTICES ACT

46.     Plaintiff restates and realleges each and every paragraph set forth herein by reference.

47.     The Arkansas Fair Debt Collection Practices Act, codified at Ark. Code Ann. § 17-24-501, et seq., makes it illegal for a debt collector to take or threaten to take "a nonjudicial action to effect dispossession or disablement of property if ... no present right exists to possession of the property claimed as collateral through an enforceable security interest." Ark. Code Ann. § 17-24-507(b)(6)(A).

48.     Bank of America meets the definition of a "debt collector" under the plain language Ark. Code Ann. § 17-24-502.

49.     Defendant violated the clear language of the aforementioned Act.

50.    Plaintiff is entitled to her attorney's fees, costs, and damages as more particularly set forth below.

51.    Punitive damages should be assessed against the Defendant to punish it and to deter such conduct from it and others similarly situated.

## DAMAGES

52.    Plaintiffs restate and reallege each and every paragraph set forth herein.

53.    Defendant wrongfully converted Plaintiff's property into its own. Plaintiff is entitled to the full value of the property.

54.    Defendant has caused debt collectors to wrongfully hound and harass the Plaintiff *ad nauseum.* These calls, letters, and visits by debt collectors have caused undue and severe mental anguish, for all of which the Plaintiff should be compensated.

55.    Defendant wrongfully instituted eviction proceedings against the tenant who was occupying the mobile home at 113 West Elise Avenue. Plaintiff is entitled to lost rental payments and the loss of future rental income from the property.

## PUNITIVE DAMAGES

56.    The Defendant knew or should have known, in light of the surrounding circumstances, that its conduct would naturally and probably result in damage, and it continued such conduct in reckless disregard of Plaintiff's rights.

57.    Defendant's reckless conduct equates to gross negligence.

58.    Punitive damages should be assessed to punish Bank of America and to deter the Defendant, and others similarly situated, from such conduct in the future.

Page 8 of 9

59.   Plaintiffs request a trial by jury.

WHEREFORE, Plaintiff prays for a judgment against the Defendant in an amount to be determined by a jury; for punitive damages; for her costs and attorneys' fees; for a jury trial; and for all other fit and proper relief to which she may be entitled.

Respectfully submitted,

Attorneys for Plaintiff

By:_____
Austin H. Easley
Arkansas Bar No. 2010154
EASLEY & HOUSEAL, PLLC
Post Office Box 1115
Forrest City, Arkansas 72336-1115
P:  (870) 633-1447

and

_____
Jennifer H. Collins
Arkansas Bar No. 2002184
HICKY & COLLINS
415 E. Cross Ave.
Forrest City, Arkansas 72335
P:  (870) 630-9895

IN THE CIRCUIT COURT OF ST. FRANCIS COUNTY, ARKANSAS
PROBATE DIVISION

IN THE MATTER OF THE ESTATE OF
BOBBY EUGENE DANIEL, Deceased                              PR-2012-16-4

## LETTERS TESTAMENTARY

BE IT KNOWN:

That FELICIA DANIEL, whose address is 1085 Holiday Drive, Apartment #221,

Forrest City, Arkansas 72335, having been appointed and having qualified as Executrix

of the estate of BOBBY EUGENE DANIEL, deceased, who died on or about the 28th day

of December, 2011, is hereby authorized to act as Executrix for and in behalf of the estate

and to take possession of the estate's property thereof as authorized by law.

ISSUED this 27th day of February, 2012.

Emily R. Holley, Probate Clerk

By _Janice McCain_ Deputy Clerk



SEAL



EXHIBIT
A

FILED
8:23 am
FEB 2 7 2012
Emily R. Holley
County & Probate Clerk

ORPRDNRBS46b          4/18/2012 4:45:47 PM   PAGE  60/142     888-294-5658

# NOTE

Multistate

FHA Case No.
2-703

April 17, 2008          MIN                                    5/55
[Date]

113 W. Elise Ave, Forrest City, ARKANSAS 72335
[Property Address]

**1. PARTIES**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means United Wholesale Mortgage

and its successors and assigns.

**2. BORROWER'S PROMISE TO PAY; INTEREST**

In return for a loan received from Lender, Borrower promises to pay the principal sum of Eighty Six Thousand Seven Hundred Eighty Two and 00/100

Dollars (U.S. $     86,782.00     ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of Six percent (     6.000     %) per year until the full amount of principal has been paid.

**3. PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4. MANNER OF PAYMENT**

(A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on June 1     , 2008     . Any principal and interest remaining on the first day of May 2023     , will be due on that date, which is called the "Maturity Date."

(B) Place

Payment shall be made at P.O. BOX 970 Birmingham, MICHIGAN 48012
or at such place as Lender may designate in writing by notice to Borrower.

(C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $     732.32     . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge  ☐ Growing Equity Allonge  ☐ Other [specify]

**5. BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

4515

FHA Multistate Fixed Rate Note - 10/95
-4R (0210).02
VMP Mortgage Solutions (800)521-7291
Page 1 of 2          Initials ___

EXHIBIT
B

REDACTED

**6. BORROWER'S FAILURE TO PAY**

    (A) Late Charge for Overdue Payments

      If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four       percent (      4.000 %) of the overdue amount of each payment.

    (B) Default

      If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

    (C) Payment of Costs and Expenses

      If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**

      Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

      Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

      Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

      If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

      BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ 4-17-12 (Seal)
Bobby Eugene Daniel    -Borrower

_____ (Seal)
    -Borrower

_____ (Seal)
    -Borrower

_____ (Seal)
    -Borrower

_____ (Seal)
    -Borrower

Pay to the order of COUNTRYWIDE BANK, FSB
without recourse
UNITED WHOLESALE MORTGAGE

KATHERINE L. WELTY, CEO

PAY TO THE ORDER OF
WITHOUT RECOURSE
COUNTRYWIDE BANK, FSB    Page 2 of 2

BY _____
Laurie Meder
SENIOR VICE PRESIDENT

REDACTED



DANIEL   BE

Return To:
United Wholesale Mortgage

555 South Adams Road, Birmingham,
MICHIGAN 48009

Prepared By:
Lori L. Ziomek

555 South Adams Road, Birmingham,
MICHIGAN 48009



State of Arkansas, County of St. Francis
Filed for record the ___ day of April 2008 at 3:25
O'clock P M., and recorded in Book ___ Page 97
(BETTE S. GREEN) Circuit Clerk
By _____ D.C.

—————————— [Space Above This Line For Recording Data] ——————————

State of Arkansas

# DEED OF TRUST

FHA Case No.
███████2-703

MIN ███████5155

THIS DEED OF TRUST ("Security Instrument") is made on April 17, 2008
The Grantor is Bobby Eugene Daniel, A Married Man

("Borrower"). The trustee is John D. Bridgforth

whose address is 710 N. Washington, Forrest City, Arkansas 72335

("Trustee"). The Beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. United Wholesale Mortgage

("Lender") is organized and existing under the laws of MICHIGAN                                   , and
has an address of 555 South Adams Road, Birmingham, MICHIGAN 48009
. Borrower owes Lender the principal sum of
Eighty Six Thousand Seven Hundred Eighty Two and 00/100
Dollars (U.S. $      86,782.00      ).

█████4N15
FHA Arkansas Deed of Trust with MERS - 4/96
VMP-4N(AR) (0404)      Amended 2/98
Page 1 of 8
VMP Mortgage Solutions, Inc. (800) 521-7291



EXHIBIT
C

REDACTED

This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on May  01,  2023
                                . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust, with the power of sale, the following described property located in St.  Francis                                                                                                County, Arkansas:
Lot Fifty-Five (55) of the Burk Mann Addition No. 1 to the City of Forrest City, Arkansas, according to plat recorded in City Plat Book at page 162 of the records of St. Francis County, Arkansas.

Parcel ID Number: 0749-00055-0000
which has the address of 113 W. Elise Ave                                                                                          [Street]
Forrest City,                              [City], Arkansas 72335              [Zip Code] ("Property Address");
    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
    Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.
    BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
    Borrower and Lender covenant and agree as follows:
    UNIFORM COVENANTS.
    1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
    2. Monthly Payment of Taxes, Insurance and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

███4515

VMP®-4N(AR) (0404) .                                                    Page 2 of 9

98

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. Application of Payments. All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating

4515



VMP®-4N(AR) (9404)                    Page 5 of 8                    Initials: [signature]

REDACTED

circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. Charges to Borrower and Protection of Lender's Rights in the Property. Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien, Borrower shall satisfy the lien, or take one or more of the actions set forth above within 10 days of the giving of notice.

8. Fees. Lender may collect fees and charges authorized by the Secretary.

9. Grounds for Acceleration of Debt.

(a) Default. Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

███ 4575

████ -4N(AR) (9404)                    Page 4 of 8



REDACTED

(b) Sale Without Credit Approval. Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

    (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

    (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

███████4575

V████-4N(AR) (9404)                      Page 5 of 9

REDACTED

13. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. Governing Law; Severability. This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Assignment of Rents. Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

 4525

VMP®4N(AR) (8404)                    Page 6 of 8                    

102

REDACTED

18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding and sale of the Property. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

It is understood and agreed to by Borrower that this Security Instrument is subject to the foreclosure procedures of the Arkansas Statutory Foreclosure Law, Act 53 of 1987, as amended from time to time (the "Act"), for Borrower's breach of any covenant or agreement in this Security Instrument. In furtherance and not in limitation of the provisions of paragraph 11, any forbearance by Lender in exercising any right or remedy under the Act shall not be a waiver of or preclude acceleration and the exercise of any right or remedy under the Act, or at the option of Lender, use of judicial foreclosure proceedings.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. Release. Upon payment in full of all sums secured by this Security Instrument, Lender shall release this Security Instrument. The release shall be made without charge to Borrower. Borrower shall pay any recordation costs.

20. Waivers. Borrower waives all rights of homestead exemption in, and statutory redemption of, the Property and all right of appraisement of the Property and relinquishes all rights of curtesy and dower in the Property.

21. Substitute Trustee. Lender, at its option and with or without cause, may from time to time appoint a successor Trustee in accordance with Act 53 of 1987, as amended from time to time.

22. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider   ☐ Growing Equity Rider   ☐ Other [specify]
☐ Planned Unit Development Rider   ☐ Graduated Payment Rider

▇▇4515

VMP-4N(AR) (0404)

Page 7 of 9

Initial▇▇▇

REDACTED

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____        _____ 4-17-08 (Seal)
                                        Bobby Eugene Daniel                -Borrower

                                        _____ 4-17-08
                                                                          (Seal)
                                                                          -Borrower

_____        _____ (Seal)
                                                                          -Borrower

_____ (Seal)         _____ (Seal)
                        -Borrower                                         -Borrower

_____ (Seal)         _____ (Seal)
                        -Borrower                                         -Borrower

_____ (Seal)         _____ (Seal)
                        -Borrower                                         -Borrower

104

4515

-6N(AR) (0404)                          Page 8 of 9.

REDACTED

STATE OF ARKANSAS,                                    County ss: St. Francis
On this the 17th         day of                      , before me, the undersigned officer,
personally appeared Bobby Eugene Daniel and Felicia M. Daniel, his wife

known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged that he/she (they) executed the same for the purposes therein contained.
In witness whereof I hereunto set my hand and official seal.

_____
Notary Public

My Commission Expires: 5/23/17

Lien Holder: CBC/AES/NCT

Address:

Telephone Number:
Contact

            for release of lien.



451.5
CBC-5N(AR) (0404)              Page 0 of 0

105

REDACTED

S310L 11943 03/30/2010

## Bank of America

Home Loans

**PAYOFF DEMAND STATEMENT**

Payoff Department, Mail Stop TX2-981-03-13
7105 Corporate Drive
Plano, TX 75024-4100

AT1     5-772-31427-0001271-002-1-000-000-000-000
BOBBY EUGENE DANIEL
113 W ELISE AVE
FORREST CITY, AR 72335

**Statement Void After
January 24, 2012.**

Statement Date
January 10, 2012

Bank of America, N.A.
Loan No.: ███1937
FHA Case#: ███2703

Name & Property Address:
Bobby Eugene Daniel
113 W. Elise Ave
Forrest City, AR  72335

Escrow #                    X

(FHA-15YR)

| PAYOFF CALCULATION | | |
|---|---|---|
| Principal Balance as of 12/01/2011 | | $72,505.72 |
| Interest from 12/01/2011 to 01/31/2012 | | 725.06 |
| Mortgage Insurance Premium | | 14.99 |
| Total Amount Required to Release Lien (As of January 24, 2012) | | $73,245.77 |
| Payoff Statement via Facsimile Fee | | 5.00 |
| **Total Amount Due** | | **$73,250.77** |

*AMENDED DEMAND STATEMENTS ARE SENT AUTOMATICALLY IF THE TOTAL AMOUNT DUE INCREASES BEFORE JANUARY 24, 2012.*

**PAYOFF INSTRUCTIONS**

Payoff funds must be made payable to Bank of America, N.A. and will be accepted by WIRE or CERTIFIED FUNDS ONLY.  They MUST reference the Bank of America, N.A. loan number, property address and borrower's name in the OBI (Originator Beneficiary Information) field of the wire transfer or on the face of the check and must be sent per the instructions below.  Failure to do so may cause delays resulting in additional interest due or the return of the funds to the remitter.  Funds received after 4:00 p.m. Central Time may be posted the following business day.

Wire Funds to:                          Mail CERTIFIED Funds to:
Beneficiary Bank: Bank of America        Bank of America, N.A.
ABA Routing #: ███                       Attention: Payoff Department, Mail Stop TX2-981-03-13
Beneficiary Acct Name: MRC               7105 Corporate Drive
MRC Account #: ███                       Plano, TX 75024-4100
Reference: Bobby Eugene Daniel
Loan Number: ███1937

PLEASE DO NOT SEND CERTIFIED FUNDS TO THE WIRE FUNDS INSTRUCTIONS ABOVE AS CERTIFIED FUNDS MUST BE PROCESSED IN OUR PAYOFF DEPARTMENT.



EXHIBIT
D

REDACTED

| Bank of America, N.A. | Statement Date: | Statement Void After: |
|---|---|---|
| Loan No: ████ 1987 | January 10, 2012 | January 24, 2012 |

The following escrow items may be disbursed prior to our receipt of payoff funds:

| ESCROW | Escrow Item | Last Pmt Date | Last Pmt Amt | Next Due Date |
|---|---|---|---|---|
| ACCOUNT | County Tax | 03/29/2011 | 6.02 | 03/01/2012 |
| INFORMATION | S/T FHA MIP | | | 02/01/2012 |
| | Hzd:Farm Bureau Insurance CO | 03/03/2011 | 724.17 | 04/01/2012 |

*YOUR CURRENT ESCROW BALANCE IS $602.30. BANK OF AMERICA, N.A. AUTOMATICALLY PROCESSES ESCROW REFUNDS 14 DAYS AFTER PAYOFF IN ORDER TO ENSURE ALL OUTSTANDING FUNDS HAVE CLEARED.*

### IMPORTANT INSTRUCTIONS ON PAYMENT OF SHORTAGE

If the payoff amount actually received by Bank of America, N.A. to pay off your loan is insufficient to pay the amount due as described in this statement, we may treat your payment as an instruction to deduct the shortage from any refund you would receive of monies from your escrow account. We will not do this, however, if (i) the shortage is greater than $2,000.00, or (ii) you have instructed us not to do so. You may contact our Customer Service Department for this purpose at 1-800-669-6607.

| ESTIMATED | As of | Amount | | As of | Amount |
|---|---|---|---|---|---|
| PAYOFF | 01/17/2012 | 73,250.77 | | 01/25/2012 | 73,250.77 |
| SCHEDULE | 01/18/2012 | 73,250.77 | Total Payoff as of | 01/26/2012 | 73,250.77 |
| | 01/19/2012 | 73,250.77 | January 24, 2012 | 01/27/2012 | 73,250.77 |
| | 01/20/2012 | 73,250.77 | $73,250.77 | 01/30/2012 | 73,250.77 |
| | 01/23/2012 | 73,250.77 | | 01/31/2012 | 73,250.77 |

### AUTOMATIC PAYOFF UPDATES

Bank of America, N.A. provides free estimated payoff information through an automated telephone system at 1-800-669-5833. If all payoff figures are available. You have elected to purchase Bank of America, N.A.'s written expedited payoff service via facsimile, for a charge of $5.00, which includes free automatic updates through the expiration of the demand. The payment of this fee is NOT a condition for the release or reconveyance of the Security Instrument. If you request further written payoffs via facsimile, they may be subject to an additional charge of $5.00 per statement, if allowed by applicable law.

### PAYOFF OVERAGES

If Bank of America, N.A. receives funds greater than the amount required to pay off your loan, we will automatically process the overage within 14 days after payoff and return the excess amount to you. If an address change is being submitted on behalf of the borrower, the form MUST be signed by the borrower for the address change to take effect.

### BANKRUPTCY DISCHARGE

If you have received a discharge of this debt in a bankruptcy, you have no personal obligation to repay this debt. However, the lender may still foreclose on your property if the debt is not paid as required by the loan documents. This payoff statement is provided at your request and for your convenience. This is not an attempt to collect a debt that has been discharged, nor a demand for payment.

### ADDITIONAL INFORMATION

The payoff amount indicated in this statement is subject to change for various reasons, including but not limited to the following:

- We may not have posted a recently submitted payment; (Please DO NOT place a stop payment on any check.)
- A fee may be assessed if a payment is returned unpaid by your financial institution for any reason;
- Additional or anticipated fees and costs may be incurred relating to collection, foreclosure, bankruptcy, or other defaults on your loan;
- Adjustments may be required to reflect disbursements made by, or payments owed to, your prior lender if the servicing of your loan was transferred to Bank of America, N.A.;
- Late charges may be assessed for delinquent payments received after: 01/16/2012;
- Funds may be deducted from your escrow account to pay taxes, insurance or other escrow items that become due.

### REDACTED

PAGE 01/02

Cashed 2/1/2012



EXHIBIT

REDACTED

FARM BUREAU CLAIMS

581228139

84/84/2012   12:22

THE ORIGINAL DOCUMENT HAS A WHITE REFLECTIVE WATERMARK ON THE BACK. HOLD AT AN ANGLE TO VIEW. DO NOT CASH IF NOT PRESENT.

## FARM BUREAU MUTUAL INSURANCE COMPANY OF ARKANSAS, INC.

**CLAIM NUMBER** ████6449

FARM BUREAU CENTER - 10720 KANIS RD. - P.O. BOX 31 - LITTLE ROCK, AR 72203-0031

FIRST SECURITY BANK SEARCY, AR   81-153 / 829

**ISSUE DATE: 01/23/12**

**CHECK NO.** 00121493

**ISSUE AMOUNT**
***$73,283.10

SEVENTY-THREE THOUSAND TWO HUNDRED EIGHTY-THREE AND 10/100 DOLLARS

PL PO Received

PAY TO THE ORDER OF:
████████
BANK OF AMERICA, N.A.
PAYOFF DEPT, MAIL STOP TX2-981-03-13
7105 CORPORATE DRIVE
PLANO, TX 75024-4100

PL PO Received

JAN 3 1 2012

*David L. Moore*
AUTHORIZED SIGNATURE

JAN 3 1 2012

⑊000012149⑊  ⑊082401538⑊  ████████  ⑊000732831 0⑊

ENDORSE CHECK HERE

X

FOR DEPOSIT ONLY

BANK OF AMERICA

JAN 3 1 2012

DO NOT WRITE  SIGN  STAMP BELOW THIS LINE

DEPOSITORY **Cash Register**

Plano TX

.5453       6 6 6 0 0

Bank of America
N.A. 0771

▶ 1 1 1 0 0 0 0 0 5 4 ◀

JAN 31 02





Please look for the following additional check
security features before accepting this document. IF
NOT PRESENT, DO NOT NEGOTIATE THIS
DOCUMENT.

- **Laid lines** on the back of check should be in alignment
  or the check is not authentic — watch for cut and paste
- **Microprinting** - under magnification, the top border on
  the front of this check should read "Arkansas Farm Bureau"
- **Thermochromic ink** - Bank and Business Solutions mark
  on back of check fades from blue to clear when heat is
  applied
- **An Artificial Watermark** is present and is viewable at
  an angle.
- **Security void pattern** on front if copied.



REDACTED

State of Arkansas, County of St. Francis
Filed for record the _14_ day of _Oct_ 20 _14_ at _11:00_
O'clock _A_ M., and recorded in Book _860_ Page _45_
(BETTE S. GREEN), Circuit Clerk
by _____, D.C.
P 3 / 2 2
UP

INSTRUMENT PREPARED BY:
MACKIE WOLF ZIENTZ & MANN, P.C.
124 W. CAPITOL AVENUE, SUITE 1560
LITTLE ROCK, AR 72201
(501) 218-8111
MWZM No.: 13-000595-570

RECORDING LEGEND

PLEASE RECORD IN THE APPROPRIATE
REAL ESTATE RECORDS

GRANTOR(s)
BOBBY DANIEL AND FELICIA M
DANIEL
GRANTEE(s)
BANK OF AMERICA, N.A.

## TRUSTEE'S DEED
### (by Substitute Trustee)

On April 17, 2008, BOBBY DANIEL AND FELICIA M DANIEL executed a Deed of Trust in favor of John D Bridgforth, as Trustee for Mortgage Electronic Registration Systems, Inc. as nominee for United Wholesale Mortgage it's successors and assigns, which was recorded on April 22, 2008, in Book 790, Page 97 in the real property records of St. Francis County, Arkansas, for the purpose of securing the payment of certain indebtedness set out in said deed of trust, they did grant, sell and convey to the Trustee the following described property, situated, lying and being in the County of St. Francis, State of Arkansas:

> Lot Fifty-five (55) of the Burk Mann Addition No. 1 to the City of Forrest City, Arkansas, according to plat recorded in City Plat Book at Page 162 of the Records of St. Francis County, Arkansas.

More commonly known as 113 W. Elise Avenue, Forrest City, AR 72335

A default occurred in the payment of the indebtedness and BANK OF AMERICA, N.A., holder of the indebtedness, elected to sell the property in accordance with the provisions of Ark. Code Ann § 18-50-101, et. seq., as amended (the "Act") for the purpose of paying the indebtedness.

Mackie Wolf Zientz & Mann, P.C. was duly appointed as Substitute Trustee, under the provisions of Act 983 of 1999, as Amended, and in its capacity as Substitute Trustee proceeded to sell the property pursuant to the Act.

XXXXX1937/13-000595-570



EXHIBIT
G

45

Notice of time, place and terms of such sale, as prescribed by the terms of the Act, was given by mailing of the requisite Trustee's Notice of Default and Intention to Sale (hereafter "Notice") within thirty (30) days of the recording of the Notice, the Notice being published in a local newspaper of general circulation in St. Francis County four (4) times for four (4) consecutive weeks, with the last publication being no more than ten (10) days prior to the sale, and by publishing notice of such sale by a third party Internet foreclosure sale notice information service provider, and by posting notice of such sale by a third-party posting provider, at the place in the courthouse for St. Francis County, Arkansas, where notices of judicial sales are customarily posted.

Pursuant to the provisions of said Act, BANK OF AMERICA, N.A., by its substitute trustee, Mackie Wolf Zientz & Mann, P.C. proceeded to sell the property at public auction, at the front door entrance of the St. Francis Count Courthouse, 313 South Izard, Forrest City, AR 72335, on October 8, 2014 at or about 12:15 PM.

The sale was conducted pursuant to said Act by a third party auctioneer|realtor and the property sold to BANK OF AMERICA, N.A. FOR $16,032.40, it being the best and highest bid.

Pursuant to Act 885 of 2011, the undersigned received certification that BOBBY DANIEL AND FELICIA M DANIEL had not applied or was ineligible for loan modification or forbearance assistance, and that notice of such ineligibility was sent in compliance with Act 885 of 2011, under ACA §18-50-104.

NOW THEREFORE, KNOW ALL MEN BY THESE PRESENTS, Mackie Wolf Zientz & Mann, P.C., Substitute Trustee, by J.P. Sellers as aforesaid, and by virtue of the powers granted by the Act, and in consideration of the foregoing premises and the sum of $16,032.40, paid by BANK OF AMERICA, N.A., the receipt hereby acknowledged (which said sum of money has been applied according to the directions of the Act), does GRANT, SELL, QUITCLAIM AND CONVEY, AS IS, unto the said BANK OF AMERICA, N.A. and its successors and assigns forever the above described property.

TO HAVE AND TO HOLD the property, together with all and singular, the rights and appurtenances thereto in anywise belonging unto the BANK OF AMERICA, N.A., its successors and assigns forever.

EXECUTED on this _____9th_____ day of October, 2014.

_____
J.P. Sellers
Mackie Wolf Zientz & Mann, P.C., in its capacity as substitute trustee for BANK OF AMERICA, N.A.

XXXXX1937/13-000595-570

46

## ACKNOWLEDGMENT

STATE OF ARKANSAS     §
COUNTY OF PULASKI     §

On this _____ day of October, 2014, before me, _Kami Garrett_ the undersigned officer, personally appeared J.P. Sellers of Mackie Wolf Zientz & Mann, P.C., known to me (or satisfactorily proven) to be the person whose name is subscribed as Substitute Trustee for BANK OF AMERICA, N.A., and acknowledged that he/she executed the same as the act of his/her principal for the consideration, uses, and purposes therein contained.

IN TESTIMONY WHERE OF, I hereunto set my hand and official seal.

> KAMI GARRETT
> Notary Public-Arkansas
> Saline County
> My Commission Expires 04-19-2021
> Commission # 12381845

Notary Public, State of ARKANSAS

The Certificate of Compliance is attached from the Arkansas Taxpayer Access Point.

Grantee's Address:
BANK OF AMERICA, N.A.
c/o BANK OF AMERICA, N.A.
4500 PARK GRANADA
CALABASAS, CA 91302

XXXXX1937/13-000595-570

47

EXHIBIT 'A'

## SERVICEMEMBERS CIVIL RELIEF ACT AFFIDAVIT

STATE OF ARKANSAS     §
COUNTY OF PULASKI     §

BEFORE ME, the undersigned authority, on this day personally appeared J.P. Sellers, who after being sworn, deposed and stated:

1. To the best of my knowledge and belief, the mortgagors holding an interest in the above described property were (1) not members of the Armed Forces of the United States of America and had not been members of any such entities for at least nine (9) months prior to the date of the foreclosure sale the subject hereof or (2) were members of the Armed Forces of the United States of America at the time the security instrument was executed.
2. As such, the foreclosure of this property will not be subject to the provisions of 50 U.S.C.S. §501, *et seq.* (the Servicemembers Civil Relief Act).

FURTHER AFFIANT SAYETH NOT.

DATED this 9th day of October, 2014.

_____
J.P. Sellers

## ACKNOWLEDGMENT

STATE OF ARKANSAS     §
COUNTY OF PULASKI     §

On this 9 day of October, 2014, before me, Kim Garrett the undersigned officer, personally appeared J.P. Sellers of Mackie Wolf Zientz & Mann, P.C., known to me (or satisfactorily proven) to be the person whose name is subscribed as Substitute Trustee for BANK OF AMERICA, N.A., and acknowledged that he/she executed the same as the act of his/her principal for the consideration, uses, and purposes therein contained.

IN TESTIMONY WHERE OF, I hereunto set my hand and official Seal.

KAMI GARRETT
Notary Public-Arkansas
Saline County
My Commission Expires 04-19-2021
Commission # 12381845

_____
Notary Public, State of ARKANSAS

XXXXX1937/13-000595-570

48



ARKANSAS DEPARTMENT OF FINANCE AND ADMINISTRATION
## Real Property Transfer Tax Affidavit of Compliance Form

| Grantee (Purchaser) Name | | | Grantor (Seller) Name | | |
|---|---|---|---|---|---|
| BANK OF AMERICA, N.A. | | | BOBBY DANIEL AND FELICIA M. DANIEL | | |
| Address | | | Address | | |
| 4500 PARK GRANADA | | | 113 W. ELISE AVENUE | | |
| City | State | Zip Code | City | State | Zip Code |
| CALABASAS | CA | 91302 | FORREST CITY | AR | 72335 |

Date of real property transfer (as reflected on the transfer instrument):   OCTOBER 8, 2014

Name of the county where the property is located:   St. Francis County

Amount of the full consideration for the transaction:   $16,032.40

Please select the appropriate exemption below:

○ A transfer to or from the United States, the State of Arkansas, or any of the instrumentalities, agencies, or political subdivisions of the United States or the State of Arkansas.

○ Any instrument or writing given solely to secure a debt.

○ Any instrument solely for the purpose of correcting or replacing an instrument that has been previously recorded with full payment of the tax having been paid at the time of the previous recordation.

○ An instrument conveying land sold for delinquent taxes.

○ An instrument conveying leasehold interest in land only.

○ An instrument, including a timber deed, that conveys or grants the right to remove timber from land if the instrument grants or conveys the right to remove timber for a period of not to exceed twenty-four (24) months.

○ An instrument given by one (1) party in a divorce action to other party to the divorce action as a division of marital property whether by agreement or order of the court.

○ An instrument given in any judicial proceeding to enforce any security interest in real estate when the instrument transfers the property to the same person who is seeking to enforce the security interest.

◉ An instrument given to a secured party in lieu of or to avoid a judicial proceeding to enforce a security interest in real estate.

○ An instrument conveying a home financed by the Federal Housing Administration, the United States Department of Veterans Affairs, or the United States Department of Agriculture Rural Development, if the sale price of the home is sixty thousand dollars ($60,000) or less and the seller files with the county recorder of deeds a sworn statement by the buyer stating that neither the buyer nor the spouse of the buyer has owned a home within three (3) years of the date of closing and also stating the sale price of the home.

○ An instrument conveying land between corporations, partnerships, limited liability companies, or other business entities or between a business entity and its shareholder, partner or member incident to the organization, reorganization, merger, consolidation, capitalization, asset distribution, or liquidation of a corporation, partnership, limited liability company, or other business entity.

○ A beneficiary deed under ACA 18-12-608.

○ Consideration of $100 or less

○ Other (Explain): _____

_____

_____

I certify under penalty of false swearing that documentary stamps or a documentary symbol in the legally correct amount has been placed on this instrument.

J.P. SELLERS
(Print Name)                          (Signature of Requestor)                          10/9/14 (Date)

Real Property Tax Affidavit of Compliance Form (R 10/08/13)
4.9